UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>FD 120 TURNPIKE, LLC and LONDON GLASS & MIRROR LGM, INC. a/k/a LONDON GLASS & MIRROR INC.,<br><br>Defendants. | C.A. NO. CaseNumber |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff Nautilus Insurance Company ("Nautilus") brings this action pursuant to 28 U.S.C. §§ 2201–2202 for a declaration that it has no duty to indemnify Defendant London Glass & Mirror LGM, Inc. a/k/a London Glass & Mirror Inc. in connection with the default judgment that entered in the action captioned *FD 120 Turnpike, LLC v. London Glass & Mirror LGM Inc a/k/a London Glass & Mirror Inc*, C.A. No. 2385CV01320 (Worcester Super. Ct.), and that Defendant FD 120 Turnpike, LLC is not entitled to coverage or to recover from Nautilus on the judgment entered in that action. In support, Nautilus states as follows:

**PARTIES**

1. Plaintiff Nautilus Insurance Company is, upon information and belief, an insurance company organized under the laws of Arizona, with its principal place of business located at 7233 East Butherus Drive, Scottsdale, Arizona 85260. Nautilus is therefore a citizen of Arizona for purposes of diversity jurisdiction.

2. Defendant FD 120 Turnpike, LLC ("FD 120") is a Massachusetts limited liability company with a principal place of business at 118 Turnpike Road, Suite 300, Southborough, Massachusetts 01772. FD 120 owns the real property and improvements located at 120 Turnpike Road, Southborough, Worcester County, Massachusetts. Upon information and belief, all members of FD 120 are citizens of the Commonwealth of Massachusetts. Brian R. Charville and David Mr. Ferris are both listed in the corporate filings as having an address at 325 Donald Lynch Blvd., Ste. 200, Marlborough, MA 01752. Therefore, FD 120 is a citizen of Massachusetts for purposes of diversity jurisdiction.

3. Defendant London Glass & Mirror LGM, Inc. a/k/a London Glass & Mirror Inc. ("London Glass") is a Massachusetts corporation with a principal place of business at 30 Main Street, Suite 17, Ashland, Massachusetts 01721. London Glass is therefore a citizen of Massachusetts for purposes of diversity jurisdiction.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties—Nautilus is a citizen of Arizona, and FD 120 and London Glass are each citizens of Massachusetts—and the amount in controversy exceeds $75,000, exclusive of interest and costs. The policy at issue provides coverage limits of $1,000,000 per occurrence, and FD 120 has demanded that Nautilus satisfy a judgment against London Glass in the amount of $230,875.06, together with post-judgment interest and costs.

5. This Court has authority to issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants FD 120 and London Glass each reside in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

7. Assignment of this action to the Central Division at Worcester is appropriate under Local Rule 40.1 because the property at issue is located in Southborough, Worcester County, Massachusetts, the underlying action and judgment were litigated and entered in the Worcester County Superior Court, and FD 120 resides in the Central Division.

## FACTUAL ALLEGATIONS

8. Nautilus issued to London Glass Commercial General Liability Policy No. NN1100422 for the policy period March 11, 2020 through March 11, 2021 (the "Policy"). A true and accurate copy of the Policy is attached at **Exhibit A**.

9. The Policy provides limits of $1,000,000 each occurrence, $2,000,000 general aggregate, and $2,000,000 products-completed operations aggregate, subject to a $500 deductible per occurrence for bodily injury and property damage combined.

10. The Policy is a standard commercial general liability insurance policy. It provides coverage for "property damage" caused by an "occurrence," subject to the terms, conditions, and exclusions set forth therein.

11. The Policy contains, among others, the following provisions relevant to this action:

**SECTION I — COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

* * * *

**SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS**

* * * *

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

* * * *

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

* * * *

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not

> be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. . . .

* * * *

12. On or about October 13, 2020, Ferris Construction, LLC, now known as Expedited Construction, LLC ("Ferris"), FD 120's general contractor, entered into a subcontract with London Glass for the replacement of the exterior windows at the commercial office building located at 120 Turnpike Road, Southborough, Massachusetts (the "Property"). Edson De Assis Sampaio Jr. ("Edson Sampaio"), then London Glass's president, signed the subcontract on behalf of London Glass.

13. During the project, London Glass stored tempered glass panels on the Property's flat roof, which consisted of a stone-ballasted EPDM rubber membrane.

14. The business relationship between Ferris and London Glass deteriorated, and London Glass ceased work at the Property on or about February 1, 2021.

15. On February 17 and 18, 2021, London Glass filed statements with the Massachusetts Secretary of the Commonwealth identifying Jacqueline Sampaio as its president, treasurer, secretary, vice president, director, and registered agent.

16. On or about May 25, 2021, London Glass requested cancellation of the Policy.

17. On or about September 1, 2021, Ferris and FD 120 commenced a civil action against London Glass, Edson Sampaio, and Jacqueline Sampaio arising out of the window and staircase subcontracts at the Property, asserting claims for breach of contract, unjust enrichment, conversion, fraud and deceit, violation of G.L. c. 93A, and negligence, and alleging, among other things, damage to FD 120's building (the "Prior Action").

18. London Glass failed to answer the complaint in the Prior Action, default entered against it, and judgment entered against London Glass in the Prior Action on or about January 31, 2022. On or about May 25, 2022, Nautilus disclaimed coverage for the judgment entered in the Prior Action.

19. On or about July 12, 2022, counsel for FD 120 presented Nautilus with a pre-suit demand seeking $164,000 for alleged damage to the Property's roof.

20. Nautilus promptly retained defense counsel on behalf of London Glass. On July 19, 2022, the Property's roof was inspected with a building consultant retained on London Glass's behalf.

21. In or about August 2022, FD 120 replaced the Property's entire roof at a cost of $173,850.

22. Nautilus, through defense counsel and private investigators, undertook efforts to locate London Glass and its principals. By November 2022, the investigator had been unable to locate London Glass or its principals. On September 11, 2023, an investigator located Jacqueline Sampaio in Falmouth, Massachusetts, and defense counsel advised her of the claim.

23. On December 5, 2023, FD 120 commenced an action captioned *FD 120 Turnpike, LLC v. London Glass & Mirror LGM Inc a/k/a London Glass & Mirror Inc*, C.A. No. 2385CV01320, in the Worcester County Superior Court, Commonwealth of Massachusetts (the "Underlying Action"). A true and accurate copy of the complaint in the Underlying Action is attached at **Exhibit B**.

24. The Underlying Action asserts a claim of negligence against London Glass, alleging that shattered glass panels that London Glass left on the roof of the Property pierced the roof membrane and caused water damage to the Property.

25. On or about January 16, 2024, London Glass was notified in writing of the commencement of the Underlying Action.

26. On October 4, 2024, the Superior Court entered a Judgment of Dismissal under Standing Order 1-88 because service had not been completed. On October 21, 2024, the court allowed FD 120's motion to vacate the dismissal.

27. On October 25, 2024, FD 120 served the summons and complaint in hand upon Jacqueline Sampaio in Falmouth, Massachusetts.

28. Nautilus provided London Glass with a defense in the Underlying Action through retained defense counsel, Hassett & Donnelly, P.C., who filed an answer with affirmative defenses and a jury demand on behalf of London Glass on January 30, 2025.

29. On February 6, 2025, the Superior Court allowed a joint motion to extend the tracking order deadlines, which established a deadline of December 1, 2025 for the completion of discovery and March 2, 2026 for dispositive motions.

30. During the case, FD 120 served interrogatories and requests for production of documents upon London Glass.

31. Answers to interrogatories must be made by the party under oath. Defense counsel prepared draft discovery responses for London Glass that required information from, and verification by, London Glass.

32. London Glass and its principals did not provide the information necessary to answer the interrogatories, did not sign the discovery responses that defense counsel

prepared, refused to sign the answers presented, and did not make themselves available to assist in the defense.

33. In December 2025, an investigator retained to locate London Glass's principals visited a residence at which she believed she had located Edson Sampaio, but the individual refused to engage and shut the door. Jacqueline Sampaio told the investigator that she was not involved in the business.

34. On April 6, 2026, defense counsel sent cooperation demand letters by electronic mail, first-class mail, and certified mail to Edson Sampaio and Jacqueline Sampaio at multiple addresses, enclosing the outstanding discovery and expressly warning that a failure to cooperate could jeopardize coverage.

35. On April 29, 2026, defense counsel sent an additional cooperation letter to Jacqueline Sampaio urging her to respond to the outstanding discovery.

36. On May 8, 2026, defense counsel sent further cooperation letters to London Glass's principals by hand delivery. True and accurate copies of the cooperation letters dated April 6, April 29, and May 8, 2026 are attached collectively at **Exhibit C**.

37. When defense counsel made contact with Jacqueline Sampaio and Edson Sampaio, neither provided substantive assistance. Jacqueline Sampaio stated that she had no involvement in the business, that she had been added to the corporate documents only at the request of her then-husband, Edson Sampaio, and that they were divorced and no longer in contact. Edson Sampaio stated that Jacqueline Sampaio was the owner of the business and would have all pertinent records and information. Neither provided any information responsive to the outstanding discovery.

38. Despite in-person visits, telephone calls, a skip trace, and repeated written demands, London Glass never provided answers to interrogatories or responses to the document requests. As FD 120 has acknowledged, not even objections to its interrogatories and document requests were served.

39. On May 8, 2026, FD 120 filed an Application for Entry of Final Judgment in the Underlying Action pursuant to Mass. R. Civ. P. 33(a).

40. On May 11, 2026, the Superior Court entered a Default Order against London Glass pursuant to Mass. R. Civ. P. 33(a) because no answers to interrogatories had been served (the "Default"). A true and accurate copy of the Default Order is attached at **Exhibit D**.

41. The Default was the direct result of London Glass's failure to cooperate in the defense of the Underlying Action.

42. On June 2, 2026, FD 120 filed a Motion for Default Judgment seeking $173,850, supported by the affidavit of its manager, David M. Ferris.

43. On July 16, 2026, Nautilus issued a reservation of rights letter to London Glass addressing London Glass's failure to cooperate. A true and accurate copy of that letter is attached at **Exhibit E**.

44. On July 29, 2026, defense counsel filed an emergency motion to continue the hearing on the assessment of damages, which the court allowed, and the hearing was rescheduled to August 27, 2026.

45. As a consequence of the Default, London Glass was unable to contest liability in the Underlying Action, and the August 27, 2026 hearing was limited to the

assessment of damages. At that hearing, the court did not permit defense counsel to present expert testimony or an expert report on behalf of London Glass.

46. On August 27, 2026, the Superior Court issued Findings and Order on Application for Default Judgment, assessing FD 120's damages at $173,850 and ordering that judgment enter in that amount plus statutory prejudgment interest.

47. Judgment by default upon assessment of damages under Mass. R. Civ. P. 55(b)(2) entered against London Glass on August 28, 2026, and was entered on the docket on August 31, 2026, in the total amount of $230,875.06, consisting of $173,850.00 in damages and $57,025.06 in prejudgment interest calculated at 12% per annum from December 5, 2023 (the "Judgment"). True and accurate copies of the Findings and Order and the Judgment are attached collectively at **Exhibit F**.

48. Upon information and belief, no appeal or motion for post-judgment relief was filed in the Underlying Action.

49. London Glass's failure to cooperate caused actual and substantial prejudice to Nautilus because, among other things: (a) it resulted directly in the Default, which deprived Nautilus and defense counsel of any opportunity to contest liability, causation, or comparative fault on the merits; (b) it precluded London Glass from presenting evidence developed through the July 2022 roof inspection bearing on causation and on the nature, extent, and reasonableness of the claimed roof replacement, including the age and condition of the roof; (c) it deprived Nautilus of the testimony, records, and information of its insured concerning the storage of materials on the roof, the condition of the roof, and the circumstances of London Glass's departure from the project; and (d) it

resulted in a Judgment that includes $57,025.06 in prejudgment interest and continues to accrue post-judgment interest.

50. On October 6, 2026, Nautilus issued a Coverage Position Letter, Disclaimer of Coverage and Denial of Liability to London Glass, through its principals, disclaiming coverage and denying liability for the Judgment on the grounds that (a) London Glass's persistent failure to cooperate, including its failure to provide discovery responses, to sign prepared discovery, and to make itself available for the defense, constituted a material breach of Policy Condition IV.2.c that directly caused the Default and resulted in actual and substantial prejudice to Nautilus; and (b) under Policy Condition IV.3, no person or organization has a right to sue Nautilus under the Coverage Part unless all of its terms have been fully complied with (the "Disclaimer"). A true and accurate copy of the Disclaimer is attached at **Exhibit G**.

51. In the Disclaimer, Nautilus advised that it would withdraw from the defense of London Glass and would not defend or indemnify London Glass, or any other insured or additional insured, in connection with the Judgment or any further proceedings in the Underlying Action. Nautilus also reserved its rights under all other terms, conditions, and exclusions of the Policy, including the business risk exclusions and the requirement of an "occurrence," and reserved its right to seek a declaration of the parties' rights and obligations under the Policy.

52. On October 13, 2026, counsel for FD 120 sent a letter to Nautilus and to defense counsel demanding that Nautilus satisfy the Judgment, together with post-judgment interest and costs, within ten calendar days. A true and accurate copy of that letter, without enclosures, is attached at **Exhibit H**.

53. In its October 13, 2026 letter, FD 120 disputed Nautilus's noncooperation defense and stated that, absent prompt resolution, it intends to pursue a reach-and-apply remedy against the insurance proceeds under G.L. c. 175, §§ 112–113 and G.L. c. 214, § 3(9), as well as execution against London Glass. FD 120 also relied upon a certificate of insurance dated October 6, 2020 and requested the Policy's additional-insured and completed-operations forms.

54. The October 6, 2020 certificate of insurance, issued by London Glass's insurance producer, lists FD 120 as an additional insured and expressly states that it is issued as a matter of information only, confers no rights upon the certificate holder, and does not affirmatively or negatively amend, extend, or alter the coverage afforded by the policies listed.

55. FD 120 seeks to recover from Nautilus as a judgment creditor of London Glass on account of damage to FD 120's own property. FD 120 does not seek coverage for any liability of its own, and FD 120 is not an insured with respect to its own claims against London Glass.

56. Any right FD 120 may have to reach and apply the proceeds of the Policy is derivative of, and no greater than, the rights of London Glass under the Policy.

57. Because London Glass materially breached the Policy's cooperation condition, and that breach caused actual prejudice to Nautilus, no coverage is available under the Policy for the Underlying Action or the Judgment. Nautilus therefore has no duty to defend or indemnify London Glass, and FD 120 has no right to recover the Judgment, or any part of it, from Nautilus.

## COUNT I

## Declaratory Judgment
## No Duty to Defend

58. Nautilus repeats and re-alleges the allegations set forth in Paragraphs 1 through 57 above as if fully set forth herein.

59. An actual, justiciable controversy exists between Nautilus and FD 120 and London Glass concerning Nautilus's duty, if any, to defend London Glass in the Underlying Action, including in any post-judgment, enforcement, or related proceedings.

60. For the reasons set forth above, Nautilus has no duty to defend London Glass in the Underlying Action because: (a) London Glass materially breached Policy Condition IV.2.c by failing to cooperate with Nautilus and defense counsel in the defense of the Underlying Action, notwithstanding Nautilus's diligent and good-faith efforts to secure its cooperation; (b) London Glass's breach caused actual and substantial prejudice to Nautilus, including the entry of the Default and the Judgment; and (c) London Glass has failed to comply with all of the terms of the Policy, as required by Policy Condition IV.3.

61. Nautilus is entitled to a declaratory judgment that it has no duty to defend London Glass in the Underlying Action, including in any post-judgment, enforcement, or related proceedings.

## COUNT II

## Declaratory Judgment
## No Duty to Indemnify

62. Nautilus repeats and re-alleges the allegations set forth in Paragraphs 1 through 61 above as if fully set forth herein.

63. An actual, justiciable controversy exists between Nautilus and FD 120 and London Glass concerning Nautilus's duty, if any, to indemnify London Glass for the Judgment or any other liability arising from the Underlying Action.

64. For the reasons set forth above, Nautilus has no duty to indemnify London Glass for the Judgment, including the damages, prejudgment interest, post-judgment interest, and costs awarded therein, or for any other liability arising from the Underlying Action, because: (a) London Glass materially breached Policy Condition IV.2.c by failing to cooperate with Nautilus and defense counsel in the defense of the Underlying Action, notwithstanding Nautilus's diligent and good-faith efforts to secure its cooperation; (b) London Glass's breach caused actual and substantial prejudice to Nautilus, including the entry of the Default and the Judgment; and (c) London Glass has failed to comply with all of the terms of the Policy, as required by Policy Condition IV.3.

65. Nautilus is entitled to a declaratory judgment that it has no duty to indemnify London Glass for the Judgment or for any other liability arising from the Underlying Action.

## **COUNT III**

### **Declaratory Judgment**
### **FD 120 Is Not Entitled to Coverage or Recovery Under the Policy**

66. Nautilus repeats and re-alleges the allegations set forth in Paragraphs 1 through 65 above as if fully set forth herein.

67. An actual, justiciable controversy exists between Nautilus and FD 120 concerning whether FD 120 is entitled to recover the Judgment, or any part of it, from Nautilus under the Policy, whether by reach-and-apply proceedings under G.L. c. 175, §§ 112–113 and G.L. c. 214, § 3(9), as a purported additional insured, or otherwise.

68. Any right FD 120 may have to recover the Judgment from Nautilus is derivative of the rights of London Glass under the Policy and is subject to all defenses that Nautilus may assert against London Glass, including London Glass's material breach of the cooperation condition.

69. The certificate of insurance on which FD 120 relies confers no rights upon FD 120 and does not amend, extend, or alter the coverage afforded by the Policy, and FD 120 is not an insured under the Policy with respect to its own claims against London Glass for damage to its own property.

70. Because no coverage is available to London Glass under the Policy for the Underlying Action or the Judgment, FD 120 is not entitled to coverage under the Policy, and is not entitled to reach and apply the proceeds of the Policy or otherwise to recover the Judgment, or any part of it, from Nautilus.

71. Nautilus is entitled to a declaratory judgment that FD 120 is not entitled to coverage under the Policy and is not entitled to recover the Judgment, or any part of it, from Nautilus.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Nautilus Insurance Company, respectfully requests that this Honorable Court declare and adjudicate the rights, duties, and responsibilities of the parties under the terms and provisions of the Policy, and issue a judicial declaration that:

(a) Nautilus Insurance Company owes no duty to defend London Glass & Mirror LGM, Inc. a/k/a London Glass & Mirror Inc. in the Underlying Action, including in any post-judgment, enforcement, or related proceedings;

(b) Nautilus Insurance Company owes no duty to indemnify London Glass & Mirror LGM, Inc. a/k/a London Glass & Mirror Inc. for the Judgment entered in the Underlying Action or for any other liability arising from the Underlying Action;

(c) FD 120 Turnpike, LLC is not entitled to coverage under the Policy and is not entitled to reach and apply the proceeds of the Policy or otherwise to recover the Judgment, or any part of it, from Nautilus Insurance Company; and

(d) such other relief as the Court deems just and proper.

Respectfully submitted,

NAUTILUS INSURANCE COMPANY

By Its Attorneys,
MORRISON MAHONEY LLP

/s/ William A. Schneider

William A. Schneider, BBO #636421
wschneider@morrisonmahoney.com
Thomas M. Prokop, BBO #660362
tprokop@morrisonmahoney.com
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500
Fax: 617-342-4951