# EXHIBIT G

NAUTILUS
INSURANCE GROUP
| a Berkley Company

October 6, 2026

**FIRST CLASS MAIL & CERTIFIED MAIL, RETURN RECEIPT REQUESTED - CLAIM #N000010125649**

Ms. Jacqueline Sampaio
88 Bittersweet Road
Falmouth, MA 02536

Mr. Edson De Assis Sampaio
88 Bittersweet Road
Falmouth, MA 02536
and
30 Main Street, Suite #17
Ashland, MA 01721

London Glass & Mirror LGM, Inc.
30 Main Street, Suite #17
Ashland, MA 01721

| | | |
|---|---|---|
| RE: | Company | Nautilus Insurance Company |
| | Claim Number: | N000010125649 |
| | Policyholder: | London Glass & Mirror LGM, Inc. |
| | Plaintiff(s): | FD 120 Turnpike, LLC; BPG Broadway Storage, LLC |
| | Policy Number(s): | NN1100422 |
| | Policy Period(s): | 03/11/2020 - 03/11/2021 |
| | Date of Loss: | 02/01/2021 |
| | Court: | Worcester County Superior Court |
| | Docket Number: | 2385CV01320 |

**COVERAGE POSITION LETTER**
**DISCLAIMER OF COVERAGE AND DENIAL OF LIABILITY**

Dear Ms. Sampaio and Mr. Sampaio:

This letter serves as Nautilus Insurance Company's formal disclaimer of coverage and denial of liability regarding Claim No. N000010125649, and the related civil action captioned *FD 120 Turnpike, LLC v. London Glass & Mirror LGM Inc. a/k/a London Glass & Mirror Inc.*, C.A. No. 2385CV01320, pending in the Worcester County Superior Court. This letter follows our Reservation of Rights letter dated July 16, 2026, addressing cooperation issues that led to the entry of a significant default judgment.

Nautilus Insurance Company issued Commercial General Liability Policy No. NN1100422 to London Glass & Mirror LGM, Inc. for the policy period March 11, 2020, through March 11, 2021,

with policy limits of $1,000,000 per occurrence, a $2,000,000 general aggregate, and a $2,000,000 products/completed operations aggregate, subject to a $500 deductible for "bodily injury" and "property damage" combined per "occurrence."

Based on our thorough investigation, including review by defense counsel and coverage counsel, Nautilus has determined that coverage does not apply to your liability as established by the default judgment entered against London Glass & Mirror in the above-captioned matter. For the reasons set forth below, Nautilus disclaims coverage and denies liability for the default judgment, and any damages awarded therein, and will be withdrawing from the defense of this matter. Below please find a more detailed explanation for this decision.

As you know, the underlying claim arises from a window replacement project at 120 Turnpike Road, Southborough, Massachusetts. FD 120 Turnpike, LLC ("Plaintiff") alleges that its general contractor, Ferris Construction, LLC, contracted with London Glass & Mirror, Inc. to replace all exterior windows at a commercial office building. The subcontract was dated October 13, 2020, and was signed by Edson Sampaio on behalf of London Glass. During the project, London Glass stored large tempered glass panels on the building's flat roof. The business relationship between Ferris Construction and London Glass deteriorated, and London Glass ceased work at the premises in February 2021. Plaintiff alleges that the shattered glass panels penetrated the EPDM rubber membrane roof, causing water damage due to rain intrusion and leaks. Plaintiff seeks $173,850 in damages for full roof replacement.

The following reflects a chronology of pertinent events and circumstances of the claim:

- October 13, 2020 — Subcontract executed between Ferris Construction, LLC and London Glass & Mirror, Inc. for replacement of exterior windows at 120 Turnpike Road, Southborough, MA. Signed by Edson Sampaio on behalf of London Glass.
- February 1, 2021 — London Glass ceased work on the premises. Glass panels were left on the roof. This was reported as the date of loss.
- May 25, 2021 — Named Insured requested cancellation of Policy No. NN1100422.
- December 5, 2023 — Complaint filed by FD 120 Turnpike, LLC against London Glass & Mirror LGM Inc. in Worcester County Superior Court (Docket No. 2385CV01320). Cause of action: negligence — property damage.
- January 16, 2024 — Defense Counsel examined the complaint. Suit warning letter sent to the insured.
- October 4, 2024 — Court granted Judgment of Dismissal Without Prejudice for Plaintiff's failure to serve London Glass pursuant to Standing Order 1-88.
- October 25, 2024 — Service of process completed on Jacqueline Sampaio by Constable in Falmouth, MA (Barnstable County).
- January 2025 — Plaintiff re-certified the case and the court granted the motion to vacate the dismissal; case reinstated.
- January 28, 2025 — Defense Counsel filed Answer to Plaintiff's Complaint with Affirmative Defenses and Jury Demand.
- February 10, 2025 — Court issued new Tracking Order: discovery due December 1, 2025; dispositive motions due March 2, 2026; pretrial conference June 25, 2026; judgment deadline December 28, 2026.
- December 1, 2025 — Discovery completion deadline passed per the Tracking Order.
- December 11, 2025 — Action Plan documented. Named Insured noted as having "disappeared and not cooperated."

- December 15, 2025 — Investigator retained to locate the insured. Investigator believed she found Edson Sampaio but the individual slammed the door. Jacqueline Sampaio stated she was not involved in the business.
- April 6, 2026 — Insured was sent cooperation demand letters via electronic mail, first-class mail, and certified mail at multiple addresses, enclosing the outstanding discovery and warning that failure to cooperate could jeopardize coverage.
- April 29, 2026 — Additional cooperation letter sent to Jacqueline Sampaio urging response to outstanding discovery.
- May 8, 2026 — Defense Counsel sent further cooperation letter to the insured parties by hand delivery.
- May 11, 2026 — Worcester County Superior Court entered default against London Glass & Mirror under Mass. R. Civ. P. 33(a) for failure to serve answers to interrogatories.
- June 2, 2026 — Plaintiff filed Motion for Default Judgment seeking $173,850 pursuant to the Court's Default Order of May 11, 2026.
- July 16, 2026 — Nautilus drafted and mailed Cooperation Reservation of Rights letter to Jacqueline Sampaio.
- August 27, 2026 — Assessment of damages hearing held. The Court did not permit the defense to present expert testimony or the expert report. Judgment entered in the amount of $173,850 plus prejudgment interest, for a total judgment of $230,875.06.

Please refer to the following policy conditions that apply to the Commercial General Liability Coverage Part and may be found in endorsement CG 00 01 04 13:

**POLICY CONDITIONS — DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM, OR SUIT**
The policy provides in relevant part:

**SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties in the Event of Occurrence, Offense, Claim, or Suit**

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit';

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part... To sue us on this Coverage Part unless all its terms have been fully complied with.

You did not cooperate in the defense of the "suit," resulting in the entry of an adverse judgment while forfeiting meritorious defenses. Despite numerous attempts by Nautilus, Defense Counsel, and private investigators over the course of several years, London Glass & Mirror and its principals failed to cooperate with Nautilus and Defense Counsel in the defense of this matter, in material breach of the cooperation obligations set forth in the policy.

Specifically:

- You were sent cooperation demand letters via certified mail, first-class mail, hand delivery, and electronic mail to Edson and Jacqueline Sampaio at multiple addresses on April 6, April 29, and May 8, 2026, enclosing the outstanding discovery and expressly warning that failure to cooperate could result in Nautilus declining to defend the insured.

- When Defense Counsel finally made contact with you both, your accounts were contradictory and unhelpful. Jacqueline Sampaio stated she had no involvement in the business and was added to the corporate documents only at the request of her then-husband, Edson Sampaio. She stated they are now divorced and no longer in contact, and she was unable to provide any responsive information. Edson Sampaio stated that Jacqueline was the owner of the business and would have all pertinent records and information, and he similarly was unable to provide substantive information.

- Neither insured provided responsive answers to the Plaintiff's interrogatories or signed the discovery responses prepared by Defense Counsel, despite being informed that the discovery was overdue and mandatory.

- The failure to provide discovery responses directly caused the Court to enter default against London Glass under Mass. R. Civ. P. 33(a) on May 11, 2026.

- The Named Insured had previously requested cancellation of the policy on May 25, 2021, and has been effectively unavailable and non-responsive throughout the pendency of this claim.

- The insured's wholesale failure to cooperate constitutes a material breach of Policy Condition IV.2.c.

As a direct result of the insured's failure to cooperate, the Court entered default against London Glass on May 11, 2026, and a default judgment was subsequently entered in the amount of $173,850 plus prejudgment interest at the statutory rate of 12% per annum (G.L. c. 231, § 6B), for a total judgment of $230,875.06.

The insured's non-cooperation caused actual and substantial prejudice to Nautilus. Defense Counsel, Hassett & Donnelly, P.C., had identified multiple valid and meritorious defenses to the underlying claim that could not be fully pursued due to the insured's refusal to cooperate:

Retained expert Robert Stone opined that the shattered tempered glass panels lacked the mass and force necessary to penetrate the ballasted EPDM membrane roof. He found it nearly impossible for glass fragments to reach the membrane and stated that, even if they did, they lacked the force to penetrate it. The storage area affected by the fallen glass measured approximately 200 to 300 square feet against a total roof area of 18,715 square feet — less than two percent of the roof. Most interior water intrusion locations did not correspond to the window storage area on the roof. The roof was approximately 30 years old, at or near the end of its typical service life for EPDM, and was already in need of replacement independent of any alleged damage from London Glass's operations.

Expert Stone documented numerous pre-existing patches across the roof of varying ages, unrelated to the window storage, as well as cleared ballast extending well beyond the storage footprint. Pillar staining and I-beam rust in areas remote from the storage location indicated multiple leaks over time rather than a single event. He also concluded that the only legitimate remediation was replacement of glass-contaminated ballast — not full roof replacement. Plaintiff's contractor, Northstar, proposed a more expensive fully adhered system rather than a like-kind replacement.

Massachusetts applies modified comparative negligence under G.L. c. 231, § 85, which could have reduced or barred Plaintiff's recovery. At the assessment of damages hearing on August 27, 2026, the Court did not permit Defense Counsel to present expert testimony or the expert report.

Prior to the entry of default, Defense Counsel estimated a settlement range of $25,000 to $50,000. The default judgment of $230,875.06 represents an increase of approximately 360% to 820% over the estimated settlement value. This dramatic disparity demonstrates the actual and substantial prejudice caused by the insured's failure to cooperate.

Under Massachusetts law, an insurer may disclaim coverage where the insured's breach of the cooperation clause has resulted in actual prejudice to the insurer. The insured's non-cooperation directly and proximately caused the entry of default, prevented Defense Counsel from presenting meritorious defenses at trial, and resulted in a judgment vastly exceeding the reasonable settlement value of the claim.

**DISCLAIMER OF COVERAGE AND DENIAL OF LIABILITY**

Based on the foregoing, Nautilus Insurance Company hereby disclaims coverage and denies liability for the default judgment entered against London Glass & Mirror in the above-captioned matter. Nautilus additionally reserves its rights to deny coverage based on the potential applicability of business risk exclusions, including Exclusion j(5) (damage to property arising out of ongoing operations), Exclusion j(6) (damage to property requiring restoration because work was incorrectly performed), and Exclusion l (damage to "your work" arising out of it after completion), as well as the argument that the claims do not arise from an accidental "occurrence" as defined in the policy.

**WITHDRAWAL FROM DEFENSE**

As a consequence of this disclaimer, Nautilus will be withdrawing from the defense of London Glass & Mirror in the above-captioned matter. Nautilus will not defend or indemnify London Glass & Mirror, or any other insured or additional insured, in connection with the default judgment or any further proceedings in this case.

**RESERVATION OF RIGHTS**

Nautilus does not limit its right to assert limitations on coverage to the provisions of the policy set forth above. Rather, Nautilus reserves the right to enforce any and all policy provisions, including policy conditions. Nautilus reserves the right to review any additional lawsuits or amendments to

this lawsuit to make a separate determination as to whether either a defense or indemnity might be provided.

Nautilus reserves the right to withdraw, amend, revise, or supplement this disclaimer at any time and to assert any policy and/or legal defenses found to be applicable to this matter but not discussed herein. No waiver of the right to assert additional policy defenses is intended, and any such waiver is specifically denied. Any actions that have or will be taken in connection with this claim should not be construed as a waiver of any rights of Nautilus to invoke the terms, conditions, exclusions, limitations, and definitions in the policy, all of which actions taken on behalf of Nautilus are done entirely without prejudice.

Nautilus, by this letter and by its continued investigation, does not waive or invalidate any of the other terms, conditions, or exclusions of the policy. Nautilus specifically reserves the right to exercise any of the other terms, conditions, or exclusions that now exist or may later become apparent.

Nautilus specifically reserves the right to bring an action in an appropriate state or federal court of competent jurisdiction and venue to limit liability, obtain a declaration, interplead funds, enforce the limitations mentioned herein, and declare the obligations and responsibilities of the parties under the contract of insurance.

We ask that you immediately clarify and provide, for our consideration, any additional information or facts you currently have in your possession or may develop in the future that may change our decision regarding coverage, thereby providing us the opportunity to reconsider our position.

We recommend that you consult with independent legal counsel of your own choosing regarding your rights and obligations under the policy and in connection with the underlying lawsuit. You may wish to obtain advice regarding the default judgment and any available remedies.

Your privacy throughout the claim process is very important to us. To learn more about our privacy policies, including how we collect, use and share information, please visit www.nautilusinsgroup.com and click the "Privacy Policies" tab at the bottom of the page. Our Notice of Personal Information Collected per California's CCPA can be viewed at https://www.berkley.com/privacy#californiaCollectionAtNotice. If you wish to receive a paper copy of our privacy policies and notice, please contact 480-509-6627.

If you have any questions or desire to discuss the content of this letter or the claim further, please feel free to contact me at (800) 842-8972 or (860) 781-7534.

Sincerely,

Tanji Brown, Senior Litigation Specialist
Nautilus Insurance Group on behalf of Nautilus Insurance Company
Email: tbrown@nautilus-ins.com

cc:

Hassett & Donnelly, P.C. (Defense Counsel)
David Hassett, Esq.
Kristen Wice, Esq.
446 Main Street, 12th Floor
Worcester, MA 01608

Quaker Special Risk-Worcester
120 Front Street, Suite 510
Worcester, MA 01608

Herlihy Insurance Group
51 Pullman Street
Worcester, MA 01606